# Exhibit C

```
         SUPERIOR COURT OF THE STATE OF CALIFORNIA
                   COUNTY OF LOS ANGELES


CHRISTOPHER LISNER, an individual, )
                                   )
               Plaintiff,          )
                                   ) CASE NO.
           vs.                     ) BC706558
                                   )
CITY OF HUNTINGTON PARK, a         )
municipality incorporated by the   )
State of California; and           )
DOES 1 through 100, inclusive,     )
                                   )
               Defendants.         )
_____)



    VIDEOTAPED DEPOSITION OF POLICE CHIEF COSME LOZANO



Date and Time:   Wednesday, March 27, 2019
                 10:05 a.m. - 3:01 p.m.


Location:        2603 Main Street
                 Penthouse
                 Irvine, California


Reporter:        Devon Willard, CSR, RPR
                 Certificate No. 10535



Job No. 14844
```

```
1:37  1  BY MR. GROBATY:
1:37  2     Q.  Into this allegation.
1:37  3     A.  I believe Sergeant Valle interviewed
1:37  4  Samantha Lopez or obtained a statement from
1:37  5  Samantha Lopez.
1:37  6     Q.  In connection -- after the Skelly hearing
1:37  7  in connection with this?
1:37  8     A.  Before the Skelly hearing.
1:37  9     Q.  No.  I'm talking about the allegation
1:37 10  raised at the Skelly hearing, which is the third
1:37 11  bullet point on Page 5.
1:37 12         Did you conduct any investigation into this
1:37 13  allegation?
1:37 14     A.  No.
1:37 15     Q.  Why not?
1:37 16     A.  Because there was -- because I view it to
1:37 17  be factually untrue.  And there was nothing in the
1:37 18  comprehensive internal affairs investigation
1:38 19  conducted by Mr. Rodig that would indicate that
1:38 20  Samantha Lopez was coerced or pressured.  The fact
1:38 21  is, Samantha Lopez didn't report these matters only
1:38 22  internally to my staff, she reported it to her
1:38 23  supervisors at the department of mental health.
1:38 24     Q.  If you knew it to be completely factually
1:38 25  untrue, what was it that Chris Lisner was supposed
```

129

```
1:38   1   to report?
1:38   2       A.  I don't know, because he hasn't told me.
1:38   3       Q.  Well, he got fired for it.
1:38   4       A.  Because he alleged and alluded and
1:38   5   indicated that myself and my staff are engaged in
1:38   6   misconduct.  By the context of anything in the
1:38   7   internal affairs investigation, I have to conclude
1:38   8   that nothing in there amounts to misconduct by
1:38   9   myself or my staff, so he must be aware of other
1:38  10   information that he is not presenting.
1:38  11       Q.  At the time his counsel told you about this
1:39  12   allegation and you asked his counsel for additional
1:39  13   information related to the allegation, which he
1:39  14   said he wasn't going to give you, did you, in your
1:39  15   mind, at that point think that Christopher Lisner
1:39  16   had committed a terminable offense?
1:39  17       A.  If he is aware of information that is
1:39  18   indicative of misconduct by any member of the
1:39  19   police department, yes.  Department employees are
1:39  20   required to report misconduct by other police
1:39  21   personnel.
1:39  22       Q.  What if the information is based on
1:39  23   something he heard, like hearsay upon hearsay,
1:39  24   would he be required to report that?
1:39  25       A.  It would have been nice for Mr. Perry to
```

130

```
1:39  1   tell me that during the Skelly.
1:39  2       Q.  I'm not talking about nice.
1:39  3           I'm saying, would he have been required to
1:39  4   report it?
1:39  5       A.  Well, I mean, if it amounts to rumor, you
1:39  6   know, supervisors --
1:40  7       Q.  Let's say somebody said, "I talked to
1:40  8   Samantha Lopez" -- or no, I'm sorry, "I talked to
1:40  9   someone who talked to Samantha Lopez, and she said
1:40 10   she was pressured."  Okay.  Let's assume that.
1:40 11           Would he be required to report that?
1:40 12           MS. MEDELLIN:  Objection.  Incomplete
1:40 13   hypothetical.
1:40 14           THE WITNESS:  I think that's a -- you know,
1:40 15   a personal decision.  I don't know that we're
1:40 16   required to report thirdhand, you know,
1:40 17   rumor-mill-type information.
1:40 18   BY MR. GROBATY:
1:40 19       Q.  Prior to the termination of
1:40 20   Christopher Lisner, did you ever listen to the tape
1:40 21   or see a transcript of the second Skelly hearing
1:40 22   that took place?
1:40 23       A.  I don't believe so.
1:40 24       Q.  You never listened to it?
1:40 25       A.  I don't believe so.
```

131

```
 1                  REPORTER'S CERTIFICATE
 2
 3           I, DEVON G. WILLARD, CSR No. 10535, RPR,
 4   Certified Shorthand Reporter, certify:
 5           That the foregoing proceedings were taken
 6   before me at the time and place therein set forth,
 7   at which time the witness was put under oath by me;
 8           That the testimony of the witness and all
 9   objections made at the time of the examination were
10   recorded stenographically by me and were thereafter
11   transcribed;
12           That the foregoing is a true and correct
13   transcript of my shorthand notes so taken.
14           I further certify that I am not a
15   relative or employee of any attorney or of any of
16   the parties, nor financially interested in the
17   action.
18           It was stipulated that the witness will
19   read and sign the deposition transcript.
20           I declare under penalty of perjury under
21   the laws of California that the foregoing is true
22   and correct.
23           Dated this 9th day of April, 2017.
24
                            _____
25                          DEVON G. WILLARD, CSR NO. 10535

                                                        186
```